**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**STATE OF CONNECTICUT**           ss: **NEW HAVEN**
**COUNTY OF NEW HAVEN**                 **October 16, 2012**

FILED
2012 OCT 17 PM 12 10
U.S. DISTRICT COURT
NEW HAVEN CT

**MASTER AFFIDAVIT**

**I.**     **INTRODUCTION**

I, Anastas Ndrenika, being duly sworn, depose and state the following:

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses. I have been employed as a Special Agent with the United States Drug Enforcement Administration (DEA) since July 2004. From December 2004 to the present, I have been assigned to the DEA New Haven District Office's New Haven Organized Crime Drug Enforcement Task Force, ("Task Force"). I am a participating member of the Task Force, which is composed of personnel from the DEA, United States Marshal Service, ("USMS"), New Haven Police Department ("NHPD"), West Haven Police Department ("WHPD"), Meriden Police Department ("MPD"), Branford Police Department (BPD), Ansonia Police Department ("APD") and Hamden Police Department ("HPD"), and as such, I have participated in numerous investigations concerning violations of federal law. More specifically, I have participated in numerous investigations of narcotics traffickers. I have coordinated controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses and undercover police officers. I have written, obtained and

1

coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of controlled substances, conducted electronic surveillance and physical surveillance of individuals involved in the distribution of controlled substances, analyzed records documenting the purchase and sale of illegal drugs, provided testimony in Grand Jury proceedings, and spoken with informants and subjects, as well as other local, state and Federal law enforcement officers, regarding the manner in which narcotics traffickers obtain, finance, store manufacture, transport, and distribute illegal drugs. I have received instruction relative to conducting drug investigations while attending the DEA Academy in Quantico, Virginia. In addition, I also receive periodic in-service training relative to conducting drug investigations. In the course of my duties, I have prepared affidavits in support of federal applications seeking authorization to intercept wire communications pursuant to Title III, and the applications in support of which these affidavits were submitted have been approved by the district court. I have prepared affidavits in support of federal and state search warrants and arrest warrants and have executed numerous federal and state search and arrest warrants.

2. This affidavit is being filed in support of Criminal Complaints and Arrest Warrants charging ERIC EVANS, a.k.a. "EJ," & "HOOV," and DAQUAN HUDSON, a.k.a. "H E" & HOAGIE" & "H" with Violation of Title 21, United States Code, Section 846, that is Conspiracy to Distribute Narcotics.

3. This affidavit sets forth facts and evidence that are relevant to the requested criminal complaints and arrest warrants, but does not set forth all of the facts and evidence that have been gathered over the course of this investigation. More specifically, I have set forth only facts that I believe are necessary to establish probable cause for the issuance of criminal complaints and

arrest warrants for EVANS and HUDSON. I have personally participated in this investigation and the statements contained in this affidavit are based, in part, on information provided by other Special Agents and Task Force Officers of the DEA, as well as physical surveillance, interception of wire and electronic communications and the training and experience of this affiant. I have not included each and every fact known to me concerning the overall investigation or the individuals and events described in this Affidavit. With respect to wire and electronic intercepts that are referenced in this affidavit, I have included interpretations which are based on my training, experience and participation in this investigation as well as that of other agents.

4. I am one of the primary investigators assigned to the investigation of KEVIN WILSON, VINCENT CLARK, JAMEEL WILKES, MICHAEL SMITH, JAMES BOWMAN and others who have committed, are committing, and will continue to commit violations of Title 21, United States Code, Section 841(a)(1) (Possession with the Intent to Distribute Controlled Substances); Title 21, United States Code, Section 843(b) (Use of a Telephone to Facilitate a Narcotics Felony); Title 21, United States Code, Section 846 (Conspiracy to Possess with the Intent to Distribute Controlled Substances); Title 18, United States Code, Section 922(g)(Unlawful Possession of Firearms by Convicted Felons); Title 18, United States Code, Section 924(c)(Use of a Firearm in Furtherance of a Drug Trafficking Crime); and Title 21, United States Code, Section 853 (Criminal Forfeitures).

## II.    The Pertinent Wiretap Authorizations

5.      On July 29, 2011, Chief United States District Court Judge Alvin W. Thompson of the United States District Court for the District of Connecticut authorized the interception of wire communications occurring over (1) cellular telephone number (203) 752-7978, ESN

A000001D264EE6 ("Target Telephone 1"), which is assigned to a pre-paid cellular telephone serviced by Verizon Wireless, subscribed to under the name of JOHN SMITH, 99 Kensington ST., New Haven, Connecticut, and which is utilized by ROBERT LEE a.k.a. "B.O.", (2) cellular telephone number (203) 535-5863, ESN A000002954C274 ("Target Telephone 2"), which is assigned to a pre-paid cellular telephone serviced by Verizon Wireless, with no subscriber and address information given, and which is utilized by ROBERT LEE a.k.a. "B.O."; (3) cellular telephone number (203) 645-5563, IMSI 310410335518465, IMEI/ESN 359273030742837 ("Target Telephone 3"), which is assigned to a pre-paid cellular telephone, serviced by AT&T Mobility, subscribed to under the name of WWI KKK, 11111 MAIN ST., New Haven, CT., 06551, and which is utilized by TYLON VAUGHN a.k.a. "BUCKY-B"; and (4) cellular telephone number (914) 227-8177, MSID 000009149128689, ESN 268435457809229678 ("Target Telephone 4"), which is assigned to a pre-paid cellular telephone, serviced by Sprint, subscribed to under the name of SUPER STAR RUDY, 809 E 221 ST., Bronx, NY., 10467, and which is utilized by KEVIN WILSON, a.k.a. "NATURE." Interception pursuant to the July 29 Order began on that date and was terminated August 27, 2011.

6.    On September 2, 2011, Chief United States District Judge Alvin W. Thompson signed an order authorizing, among other things, the interception of wire communications occurring over cellular telephone number (203) 589-9750, MSID 000002036755963, ESN 270113179508781498 ("Target Telephone 6"), which is assigned to a cellular telephone, serviced by SPRINT, subscribed to under the name of RENEE MARTIN, 75 George Street, Hamden, CT, 06514, and which is utilized by BRITT MARTIN, a.k.a. "BIG BABY"; and cellular telephone number (203) 444-8645, IMSI 310410408455200, IMEI/ESN 012599003400808 ("Target

4

Telephone 7"), which is assigned to a pre-paid cellular telephone, serviced by AT&T, subscribed to under the name of MARK CLARK, 1234 Go Phone Way, New Haven, CT, 06511, and which is utilized by VINCENT CLARK, a.k.a. "NU-NU" and "DUKE." Interception pursuant to the September 2 Order began on that date and terminated October 1, 2011.

7.      On September 6, 2011, Chief United States District Judge Alvin W. Thompson signed an order authorizing the renewed interception of wire communications and the initial interception of electronic communications, including text messages, occurring over (1) cellular telephone number (914) 227-8177, MSID 000009149128689, ESN 268435460207957376 ("Target Telephone 4"), which is assigned to a pre-paid cellular telephone, serviced by Sprint, subscribed to under the name of SUPER STAR RUDY, 809 E 221 ST., Bronx, NY., 10467, and which is utilized by KEVIN WILSON, a.k.a. "NATURE" and the initial interception of wire communications occurring over (2) cellular telephone number (203) 627-2384, MSID 000002035077645, ESN 268435460202504712 ("Target Telephone 5"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of MICHAEL SMITH, 219 County Street, New Haven, CT, 06511, and which is utilized by MICHAEL SMITH, a.k.a. "SMITTY" and "FINGERS." Interception pursuant to the September 6, 2011 began on September 7 and was terminated October 6, 2011.

8.      On October 12, 2011, the district court (Thompson, CJ) entered an order authorizing the initial interception of wire communications occurring over cellular telephone number (203) 868-7758, MSID 000002036757065, ESN 268435457809851815 ("Target Telephone 8"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of Christopher MORLEY, 245 Alston Ave, New Haven, CT 06515 and utilized by

CHRISTOPHER MORLEY a.k.a. "White Boy Chris." Interception pursuant to the October 12 Order began on October 13 and was terminated November 11, 2011. On October 13, 2011, the district court (Thompson, CJ) entered an order authorizing the renewed interception of wire communications occurring over cellular telephone number (914) 227-8177, MSID 000009149128689, ESN 268435460207957376 ("Target Telephone 4"), which is assigned to a pre-paid cellular telephone, serviced by Sprint, subscribed to under the name of SUPER STAR RUDY, 809 E 221ST ST, Bronx, NY., 10467, and which is utilized by KEVIN WILSON, a.k.a. "NATURE"; (2) cellular telephone number (203) 627-2384, MSID 000002035077645, ESN 268435460202504712 ("Target Telephone 5"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of MICHAEL SMITH, 219 County Street, New Haven, CT, 06511, and which is utilized by MICHAEL SMITH, a.k.a. "SMITTY" and "FINGERS". Interception pursuant to the October 13 order began on that date and was terminated November 11, 2011. Finally, on October 20, 2011, the district court (Thompson, CJ) entered an order authorizing the renewed interception of wire communications occurring over cellular telephone number cellular telephone number (646) 538-9994, MSID 000006462423510, ESN 270113179508781498 ("**Target Telephone 6**"), serviced by Sprint, and subscribed to under the name of Renee Martin, 75 George St., Hamden, CT, and utilized by BRITT MARTIN a.k.a. "Big Baby." Interception pursuant to the October 20 order began on that date and was terminated November 18, 2011.

9.     On November 22, 2011, Chief United States District Judge Alvin W. Thompson signed an order authorizing the renewed interception of wire communications and electronic communications, including text messages, occurring over (1) cellular telephone number (914)

6

227-8177, MSID 000009149128689, ESN 268435460701932576 ("Target Telephone 4"), which is assigned to a pre-paid cellular telephone, serviced by Sprint, subscribed to under the name of SUPER STAR RUDY, 809 E 221ST ST, Bronx, NY., 10467, and which is utilized by KEVIN WILSON, a.k.a. "NATURE"; the renewed interception of wire communications and initial interception of electronic communications, including text messages, over (2) cellular telephone number (203) 627-2384, MSID 000002035077645, ESN 268435460202504712 ("Target Telephone 5"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of MICHAEL SMITH, 219 County Street, New Haven, CT, 06511, and which is utilized by MICHAEL SMITH, a.k.a. "SMITTY" and "FINGERS"; (3) the initial interception of wire communications and electronic communications, including text messages, occurring over cellular telephone number (203) 464-6606 ("Target Telephone 9"), subscribed to Jerome Moore, 83 Elm Street, New Haven, CT 6510,[22] serviced by Verizon Wireless and utilized by MICHAEL SMITH a.k.a. "Smitty" and "Fingers,"; the initial interception of wire communications occurring over (4) cellular telephone number (203) 999-1317 ("Target Telephone 10"), MSID 000002036758031, ESN 268435457806991443, serviced by Sprint, subscribed to under the name of John Smith, P.O. Box 54988, Irvine, CA 92619 and which is utilized by BRITT MARTIN a.k.a. "Big Baby"; and the initial interception of wire communications occurring over (5) cellular telephone number (203) 589-4623, MSID 000002036762543, ESN 256691431208402018 ("Target Telephone 11"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of Christopher MORLEY, 245 Alston Ave,

---

[22] The subscriber information sheet provided by the mobile service carrier is missing the first digit of the zip code.

New Haven, CT 06515 and utilized by CHRISTOPHER MORLEY a.k.a. "White Boy Chris."

Interception and monitoring of Target Telephones 4, 5, 10 and 11 pursuant to the order set forth

above began on November 22, 2011 and were terminated December 21, 2011.  Interception of

Target Telephone 9 began under the November 22 Order began on November 25, 2011 and were

terminated December 21, 2011.

      10.     On December 22, 2011, Chief United States District Judge Alvin W. Thompson

signed an order authorizing the continued interception of wire communications and electronic

communications, including text messages, occurring over (1) cellular telephone number (914)

227-8177, MSID 000009149128689, ESN 268435460701932576 ("Target Telephone 4"), which

is assigned to a pre-paid cellular telephone, serviced by Sprint, subscribed to under the name of

SUPER STAR RUDY, 809 E 221ST ST, Bronx, NY., 10467, and which is utilized by KEVIN

WILSON, a.k.a. "NATURE"; (2) cellular telephone number (203) 627-2384, MSID

000002035077645, ESN 268435460202504712 ("Target Telephone 5"), which is assigned to a

cellular telephone, serviced by Sprint, subscribed to under the name of MICHAEL SMITH, 219

County Street, New Haven, CT, 06511, and which is utilized by MICHAEL SMITH, a.k.a.

"SMITTY" and "FINGERS"; and (3) cellular telephone number (203) 464-6606 ("Target

Telephone 9"), subscribed to Jerome Moore, 83 Elm Street, New Haven, CT 6510,[23] serviced by

Verizon Wireless and utilized by MICHAEL SMITH a.k.a. "Smitty" and "Fingers,"; and the

continued interception of wire communications occurring over (4) cellular telephone number

(203) 589-4623, MSID 000002036762543, ESN 256691431208402018 ("Target Telephone 11"),

---

[23] The subscriber information sheet provided by the mobile service carrier is missing the first digit of the zip code.

which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of

Christopher MORLEY, 245 Alston Ave, New Haven, CT 06515 and utilized by CHRISTOPHER

MORLEY a.k.a. "White Boy Chris." Interception and monitoring of Target Telephones 4, 5, 9

and 11 pursuant to the December 22, 2011, order began on that date, were terminated January 20,

2012 as to Target Telephones 5, 9 and 11 and January 4, 2012 as to Target Telephone 4.

      11.     On January 30, 2012, Chief United States District Judge Alvin W. Thompson

signed an order authorizing the continued interception of wire communications and electronic

communications, including text messages, occurring over (1) cellular telephone number (203) 627-

2384, MSID 000002035077645, ESN 268435460202504712 ("Target Telephone 5"), which is

assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of MICHAEL

SMITH, 219 County Street, New Haven, CT, 06511, and which is utilized by MICHAEL

SMITH, a.k.a. "SMITTY" and "FINGERS"; (2) the renewed interception of wire

communications occurring over cellular telephone number (203) 589-4623, MSID

000002036762543, ESN 256691431208402018 ("Target Telephone 11"), which is assigned to a

cellular telephone, serviced by Sprint, subscribed to under the name of Christopher Morley, 245

Alston Ave, New Haven, CT 06515 and utilized by CHRISTOPHER MORLEY a.k.a. "White

Boy Chris"; and the initial interception of wire communications occurring over (3) cellular

telephone number (203) 901-3644, ESN 268435459410811146 ("Target Telephone 12")

subscribed to Jayron Anderson, 325 Ferry Street, New Haven, CT 06513, serviced by Sprint and

believed to be utilized by JAMES BOWMAN a.k.a. "Jimmy Jam"; (4) cellular telephone number

(203) 906-0316, IMSI 310410273095313 ("Target Telephone 13"), subscribed to Frank Sinatra,

99 Main Street, New Britain, Connecticut, 06051, serviced by AT&T Wireless and utilized by

9

JAMES BOWMAN, a.k.a. "Jimmy Jam"; (5) cellular telephone number (203) 401-9542, UFMI 174*312*1975, IMSI 316010156103260, ESN 364KHS1FVR ("Target Telephone 14"), subscribed to Terry James, 290 Popular Street, New Haven, CT 06513, serviced by Sprint and utilized by JAMEEL WILKES a.k.a. "Biggs"; and the initial interception of wire and electronic communications, including text messages over (6) cellular telephone number (203) 584-8554, Device Identification Number A000002FDCD424 ("Target Telephone 15"), with an address of 30 Independence Blvd, Warrant, NJ 7059,[1] serviced by Verizon Wireless and utilized by MICHAEL SMITH a.k.a. "Smitty" and "Fingers." Pursuant to the above order the intercepted communications began on January 31, 2012, over Target Telephones 5, 11, & 15 and were terminated February 29, 2012. Even though the interception over Target Telephones 13 and 14 were initiated on January 31, 2012, there were no intercepted conversations. Therefore, on February 8, 2012, at approximately 11:59 p.m., interceptions over the above two cellular phones were terminated. On January 31, 2012, prior to initiating interception over Target Telephone 12, it was determined that the above phone was out of service. Therefore, interception of Target Telephone 12 never began pursuant to the above order.

12. On February 17, 2012, Chief United States District Judge Alvin W. Thompson signed an order authorizing the initial interception of wire communications occurring over (1) cellular telephone number (203) 507-7004, ("Target Telephone 16"), which is assigned to a cellular telephone, serviced by Sprint, subscribed to under the name of JAYRON ANDERSON, STREET1, CITY NJ, 06513, and which is utilized by JAMES BOWMAN, a.k.a. "JIMMY-

---

[1] A digit to the zip code is missing on subscription paperwork provided by the service carrier.

JAM,"; (2) the initial interception of wire communications occurring over (203) 308-7721,

("Target Telephone 17"), which is assigned to a cellular telephone, serviced by T-Mobile,

subscribed to under the name of Pre Paid Customer and utilized by EARL BANKS, a.k.a. "EJ,";

and the initial interception of wire communications occurring over (3) cellular telephone number

(203) 997-1140, (Target Telephone 18), IMSI 310410452043135, IMEI/ESN: 12937008945056,

which is assigned to a cellular telephone, serviced by AT&T, subscribed to under the name of

TERRENCE CANNON, 79 CABOT ST, NEW HAVEN, CT 06513, and utilized by JAMEEL

WILKES, a.k.a. "BIGGS." Interception and monitoring of Target Telephones 16, 17 and 18

pursuant to the order set forth above began on February 17, 2012. No calls were intercepted over

Target Telephone 16 and monitoring of Target Telephone 16 was terminated February 28, 2012.

Interception of Target Telephones 17 and 18 were terminated March 13, 2012.

     13.    On March 13, 2012, the United States District Court for the District of

Connecticut (Thompson, C.J.) issued an order authorizing the continued interception of wire

communications and the initial interception of electronic communications, including text

messages, occurring over (1) cellular telephone number (203) 997-1140, IMSI 310410452043135

("Target Telephone 18"), which is assigned to a cellular telephone, serviced by AT&T,

subscribed to under the name of Terrence Cannon, 79 Cabot St, New Haven, CT 06513, and

utilized by JAMEEL WILKES, a.k.a. "BIGGS"; and the initial interception of wire and

electronic communications, including text messages, occurring over (2) cellular telephone

number (203) 606-6320, ESN 355873041798282 ("Target Telephone 19"), subscriber unknown,

serviced by T-Mobile and utilized by JAMES BOWMAN a.k.a. "Jimmy Jam"; (3) cellular

telephone number (203) 606-6340, ESN 355873042909151 ("Target Telephone 20"), subscriber

AN

unknown, serviced by T-Mobile and utilized by EARL BANKS a.k.a. "EJ"; (4) cellular

telephone number (203) 627-2707 ("Target Telephone 22") subscribed to Joe Bazooka, P.O. Box

54988, Irvine, CA 92619, serviced by Sprint, and utilized by JAMEEL WILKES a.k.a. "Biggs";

and the initial interception of wire communications occurring over (5) cellular telephone number

(917) 600-7282, IMSI 311660000553673 ("Target Telephone 21"), subscribed to John Green,

121 Clinton Ave, New Haven, CT 06513-3102, serviced by Metro PCS, and utilized by JAMES

BOWMAN a.k.a. "Jimmy Jam". Interception and monitoring of Target Telephones 18, 19, 20,

21 and 22 pursuant to this order began on March 13, 2012. Interception and monitoring of

Target Telephones 19, 20 and 21 terminated on April 3, 2012. In fact, no calls were intercepted

over Target Telephone 20 as BANKS discontinued his use of that phone. Interception and

monitoring of Target Telephones 18 and 22 pursuant to the March 13, 2012 order terminated on

April 11, 2012.

      14.    On April 13, 2012, the United States District Court for the District of Connecticut

(Thompson, C.J.) issued an order authorizing the renewed interception of wire communications

and electronic communications, including text messages, occurring over (1) cellular telephone

number (203) 997-1140, IMSI 310410452043135 ("Target Telephone 18"), which is assigned to

a cellular telephone, serviced by AT&T, subscribed to under the name of Terrence Cannon, 79

Cabot St, New Haven, CT 06513, and utilized by JAMEEL WILKES, a.k.a. "BIGGS"; and (2)

cellular telephone number (203) 627-2707 ("Target Telephone 22") subscribed to Joe Bazooka,

P.O. Box 54988, Irvine, CA 92619, serviced by Sprint, and utilized by JAMEEL WILKES a.k.a.

"Biggs". Interception of Target Telephone 18 began on April 16, 2012 and terminated May 15,

2012. Interception of Target Telephone 22 began on April 14 and terminated on May 12, 2012.

### III. Wire and Electronic Intercepts pertaining to DAQUAN HUDSON, a.k.a. "H.E.," which confirmed that HUDSON was engaged in narcotics trafficking.

15. On September 30, 2011, at approximately 12:02p.m., Vincent CLARK, a.k.a. "NU-NU," received an incoming telephone call over Target Telephone #7, session #5947, from cellular telephone number 203-781-6867, subscriber unknown, utilized by DAQUON HUDSON, a.k.a. "H E." The intercepted conversation which was in the English language was monitored and recorded. The conversation in pertinent part proceeded as follows: CLARK answered, "Yo." HUDSON replied, "Yo." CLARK replied, "What up?" HUDSON said, "Yo where you at?" CLARK said, "I'm in West Hills right now." HUDSON replied, "Nigga about to call me back." CLARK said, "Who?" HUDSON said, "My nigga." CLARK said, "Alright the man said at 3 o'clock so I'm going to get you right today and the phone back ringing so I'm just give you the phone." HUDSON said, "Yeah." CLARK said, "Where FREAK at?" HUDSON replied, "He right here were in the Hill." CLARK asked, "Put Freak on the phone." [ANTHONY MOORE, a.k.a. FREAK gets on the phone.] MOORE said, "What's good yo?" CLARK replied, "What's up I'm going to give you half. I'm going to give you H E's half yall niggas get a rental. I'm about to be chuck I ain't coming outside." MOORE said, "You already know what it is you know they out this shit so do what you got to do just make the right decision." CLARK said, "Alright when you want to get it tomorrow?" MOORE said, "Shit whenever." CLARK said, "Alright." MOORE replied, "Alright." Based on my training and experience and my participation in this investigation, I do believe that in the foregoing conversation CLARK spoke to his two criminal associates, HUDSON and MOORE during which CLARK informed HUDSON that he was planning to supply HUDSON with a re-supply of narcotics once he met with his Source of

Supply after 3p.m. In addition, I do believe that when CLARK said, "Alright the man said at 3 o'clock so I'm going to get you right today and the phone back ringing so I'm just give you the phone," CLARK was informing HUDSON that he was going to turn over the drug phone to him (HUDSON) in order for the latter to continue the drug distribution activities. It should be noted that during the month of September-October 2011, CLARK was wanted for a Failure to Appear in the New Haven Superior Court therefore his movements were limited which made it impossible for him to conduct drug transactions, therefore he provided HUDSON with the drug phone. Over the course of the investigation, including through information developed following the takedown of the wiretaps, it was determined that HUDSON was distributing street level quantities of crack cocaine on behalf of CLARK. In addition, HUDSON was also identified as a partner of MOORE, who at times met with Michael SMITH, a.k.a. "SMITTY," another source of supply, to receive quantities of crack cocaine and cocaine.

16.     On October 28, 2011, at approximately 11:26a.m., Michael SMITH, a.k.a. "SMITTY," received an incoming telephone call over Target Telephone #5, session #6884, from cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The intercepted conversation which was in the English language was monitored and recorded. The conversation proceeded as follows: SMITH answered, "Yo." MOORE asked, "What's good?" SMITH replied, "Everything good." MOORE replied, "Aright well what time you coming out?" SMITH said, "A few minutes." MOORE said, "Aright I'm at the house." SMITH said, "Aright eighties baby or..." MOORE replied, "Curtis nigga." SMITH said, "(UI) I gotta check the avenue." MOORE said, "Huh?" SMITH said, "I said I gotta check the avenue nigga." MOORE replied, "Oh yea yea yea I understand." SMITH said, "Alright." MOORE said, "Yo."

14

SMITH said, "Yeah." MOORE said, "For real shit man stop playing." SMITH said, "Huh?"

MOORE said, "Stop playing man." SMITH said, "Alright." MOORE said, "No choke drive

choke drive nigga." SMITH said, "Alright." Based on my training and experience, I believe that

in the foregoing conversation MOORE contacted SMITH and made arrangements to conduct a

drug transaction later in the day. I do believe that when SMITH asked, "Aright eighties baby

or..." he was asking MOORE if he was looking to purchase crack cocaine, by identifying it by the

code word, "eighties baby," referring to the crack cocaine epidemic. Furthermore, I do believe

that when MOORE said, "Curtis nigga," and SMITH replied, "(UI) I gotta check the avenue,"

MOORE was indicating to SMITH that he wanted to purchase fifty grams of crack cocaine, and

SMITH replied by indicating that he had to check his stash of narcotics in order to determine if

he had enough supplies of crack cocaine. The words CURTIS and/or CURTIS JACKSON which

is the real name of rap artist "50 Cent" were utilized over the course of this investigation as a

coded reference to 50 gram quantities of cocaine or crack cocaine.

  17. On October 28, 2011, at approximately 11:56a.m., Michael SMITH, a.k.a.

"SMITTY," received an incoming telephone call over Target Telephone #5, session #6888, from

cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK."

The intercepted conversation which was in the English language was monitored and recorded.

The conversation proceeded as follows: SMITH answered, "Yo." MOORE replied, "He wasn't

going to see me was he?" SMITH said, "Yeah right now." MOORE said, "Well I'm over here by

you baby." SMITH said, "You ready." MOORE said, "Shit yeah, I'm straight I'm about to um, I

was going to B and M's." SMITH replied, "Aright I'll come over there but listen, ya'll nigga to

deep man." MOORE said, "We was going to the dummy......well shit, I be thinking you be taking

forever nigga I didn't know you was ready like that." SMITH said, "Aright listen to this yall

nigga too deep you don't need to be riding around three deep at no time nigga.......You heard?"

MOORE replied, "I'm listening to you." SMITH said, "Aright ....... I'll meet you at your ranch

man." MOORE said, "Alright." Based on my training and experience, I believe that in the

foregoing conversation SMITH and MOORE made arrangement to finalize the transaction for the

50 grams of crack cocaine which was going to take place at MOORE's residence, located at 200

Goffe Street in New Haven.

 18. At approximately 12:00 p.m., based on the above intercepted telephonic

communications over Target Telephone #5, surveillance was initiated in the area of 200 Goffe

Street, in an attempt to observe the meet between SMITH and MOORE. Based on the last

intercepted communication, when SMITH stated that he was going to meet MOORE "at his

ranch," it was believed that he was referring to MOORE's residence which is located at 200

Goffe Street in New Haven.

 19. At approximately 12:24 p.m., SMITH received a third incoming telephone call

over Target Telephone #5, session #6894, from MOORE, who was utilizing cellular telephone

number 203-503-7043. During the intercepted conversation, in substance, MOORE informed

SMITH that he had arrived and SMITH acknowledged. At approximately 12:30 p.m.,

surveillance observed a gray Buick operated by HUDSON and occupied by two unknown

passengers, pull up and park in the area of 200 Goffe Street, near apartment #C30 in New Haven.

At that time, surveillance observed the rear right side passenger exit the vehicle and walk

towards the center of the courtyard of 200 Goffe Street. At approximately 12:37 p.m.,

surveillance observed a burgundy colored Ford Taurus, bearing NY registration FPA-6319,



traveling eastbound on Goffe Street from Sherman Avenue. Surveillance then observed that the vehicle was operated by SMITH, who then pulled into the center parking lot of 200 Goffe Street and parked. Surveillance then observed as SMITH and HUDSON got out of their respective vehicles, walked towards each other, and greet each other with a hand shake and hug on the sidewalk. Surveillance then observed as SMITH and HUDSON walked together into the front door of 200 Goffe Street, Apartment #C30, MOORE's residence. At approximately 12:40 p.m., surveillance observed HUDSON exit the front door of 200 Goffe Street, Apartment #C30, enter the driver side of the gray Buick and depart the area, traveling westbound on Goffe Street towards Orchard Street. At approximately 12:46 p.m., surveillance observed SMITH exit the front door of 200 Goffe Street Apartment #C30, approach and enter the driver side of his burgundy Ford Taurus and then depart the area traveling westbound on Goffe Street towards Orchard Street. At approximately 12:50 p.m., surveillance was terminated. Based on the intercepted conversation and the surveillance that subsequently took place in the area of 200 Goffe Street this affiant believe that MOORE, HUDSON & SMITH met inside Apartment #C30, MOORE's residence during which SMITH supplied MOORE and HUDSON with 50 grams of cocaine base.

20.     On February 10, 2012, at approximately 12:21p.m., Michael SMITH, a.k.a. "SMITTY," received an incoming telephone call over Target Telephone #5, session #22043, from cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The intercepted conversation which was in the English language was monitored and recorded. The conversation proceeded as follows: SMITH answered, "Yo." MOORE replied, "What's good?" SMITH said, "Ain't nothing chilling what up?" MOORE replied, "Wanted to see

you." SMITH said, "Somebody?" MOORE replied, "Nah my peoples but you know you don't know him." SMITH said, "Hum what small what?" MOORE said, "Curtis." SMITH replied, "Ah same way." MOORE said, "Huh?" SMITH replied, "I said same way?" MOORE said, "Shit I'm not even sure." SMITH replied, "Find out and text me." MOORE said, "More than likely the um the other way not the way you just did it but I'm ah I'm ah call you right back." Based on my training and experience and my participation in this investigation, I believe that in the foregoing conversation MOORE contacted SMITH and was making arrangements for the purchase of 50 grams of narcotics. I do believe that when MOORE said, "More than likely the um the other way not the way you just did it but I'm ah I'm ah call you right back," he was informing SMITH that his customer wanted to purchase 50 grams of cocaine and not 50 grams of crack cocaine like MOORE had purchased on a prior occasion.

21. On February 10, 2012, at approximately 12:35p.m., Michael SMITH, a.k.a. "SMITTY," received an incoming telephone call over Target Telephone #5, session #22046, from cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The intercepted conversation which was in the English language was monitored and recorded. The conversation proceeded as follows: SMITH answered, "Yo." MOORE replied, "You ready." SMITH said, "Oh I, I didn't did you text me." MOORE said, "Huh?" SMITH said, "Did you text me?" MOORE said, "Yeah." SMITH said, "Oh I got to read it I ain't I just picked up the phone just now um where you at though you already home." MOORE said, "I'm a um have nephew meet you somewhere." SMITH replied, "Oh H." MOORE said, "Yeah." SMITH replied, "Alright um let me look at the um line and I'll call you right back." MOORE said, "Alright." Based on my training and experience, I do believe that during the foregoing

18



conversation MOORE informed SMITH that he would send his "nephew," "H" to finalize the transaction, I do believe they were referring to HUDSON, with whom SMITH was familiar with as a result of previous transactions.

22.     On February 10, 2012, at approximately 12:48p.m., Michael SMITH, a.k.a. "SMITTY," received an incoming text message over Target Telephone #5, session #22045, from cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The following was the intercepted text message: MOORE wrote, "Curtis. The other way." Based on my training and experience, I do believe that MOORE after confirming with his customer then confirmed that he wanted to purchase 50 grams of cocaine and not crack cocaine.

23.     On February 10, 2012, at approximately 12:53p.m., Michael SMITH, a.k.a. "SMITTY," received an incoming text message over Target Telephone #5, session #22048, from cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The following was the intercepted text message: MOORE wrote, "Did you get it.. Curtis. Babypowerder." During the above text message, MOORE once again confirmed with SMITH that his customer wanted to purchase 50 grams of cocaine and not crack cocaine which was the usual order.  In fact, the specific references to "other way" and "baby powder" with respect to this transaction only heightens my conclusion that prior transactions between SMITH, MOORE and HUDSON  involving "Curtis" referred to 50 gram quantities of crack cocaine.

24.     On February 10, 2012, at approximately 1:01p.m., Michael SMITH, a.k.a. "SMITTY," placed an outgoing telephone call, over Target Telephone #5, session #22049, to cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The intercepted conversation which was in the English language was monitored and recorded.

The conversation proceeded as follows: MOORE said, "Um hum." SMITH replied, "Yo." MOORE said, "Umm." SMITH said, "When I yeah I got you um when I call you have um I'm a just tell you have him meet me at my mama dukes." MOORE said, "Alright." SMITH said, "Alright." During the above conversation, SMITH directed MOORE to send HUDSON to his mother's residence located at 219 County Street in New Haven in order to finalize the cocaine transaction.

25.     As a result of the above intercepted wire and electronic communications on the same date, at approximately 1:15 p.m., surveillance was established in the vicinity of 219 County Street, New Haven, CT.

26.     On February 10, 2012, at approximately 1:19p.m., Michael SMITH, a.k.a. "SMITTY," placed an outgoing telephone call, over Target Telephone #5, session #22052, to cellular telephone number 203-503-7043, utilized by ANTHONY MOORE, a.k.a. "FREAK." The intercepted conversation which was in the English language was monitored and recorded. The conversation proceeded as follows: MOORE answered, "You ready?" SMITH said, "Yeah." MOORE replied, "Alright." During the above conversation, SMITH indicated to MOORE that he was ready to meet with HUDSON to finalize the transaction.

27.     At approximately 1:20 p.m., surveillance observed a blue Chevrolet Camaro turn northbound onto County Street, from Henry Street, and park in the vicinity of 219 County Street. At approximately 1:22 p.m., surveillance observed the blue Camaro depart from County Street. At approximately 1:26 p.m., surveillance observed HUDSON, operating the above vehicle, which was bearing Connecticut registration 214-XTF, travel southbound on Sherman Avenue, and then turn left onto Henry Street. A check with the State of Connecticut Department of Motor

Vehicles (DMV) computerized database revealed that CT Registration 214-XTF is registered to a blue 2011 Chevrolet Camaro registered to EAN Holdings LLC, 6929 N. Lakewood Avenue 1, Tulsa, OK.

28. Moments later, surveillance observed as the blue Chevrolet Camaro bearing Connecticut registration 214-XTF, traveled eastbound on Henry Street, towards County Street as SMITH operating a white Ford Taurus was observed traveling westbound on Henry Street towards County Street. Surveillance then observed as the Ford Taurus turned right onto County Street and traveled northbound, followed by the blue Camaro, which made a left-hand turn onto County Street from Henry Street. Surveillance then observed as the Ford Taurus operated by SMITH turned right into the driveway of 219 County Street, followed by the blue Camaro operated by HUDSON. The vehicles, upon entering the aforementioned driveway, traveled out of the sight of surveillance. At approximately 1:29 p.m., surveillance observed as the Camaro and the Taurus traveled southbound on Sherman Avenue. A short time later the surveillance on the vehicle operated by HUDSON was terminated. Based on the content of the prior intercepts and text messages and the surveillance, it is believed that SMITH and HUDSON consummated a cocaine transaction on this date.

**IV.** **Wire Intercepts pertaining to ERIC EVANS, a.k.a. "EJ," & "HOOV," which Confirmed that EVANS was Engaged in Narcotics Trafficking.**

29. On August 4, 2011, at approximately 7:50p.m., Kevin WILSON, a.k.a. "NATURE," placed an outgoing telephone call over Target Telephone #4, session #3844, to cellular telephone number 203-361-6511, unknown subscriber, utilized by ERIC EVANS, a.k.a. HOOV. The intercepted conversation which was in the English language was monitored and

recorded. The conversation proceeded as follows: EVANS answered, "Yo." WILSON replied, "Yo what you doing homie?" EVANS said, "Chillin right here on K." WILSON replied, "You wanna come to my crib or you want me to bring it to you?" EVANS said, "I'll come to your crib but um I just, I just was right there on the corner and the Jake was on Day. I'm bout to wait like 5 minutes." WILSON said, "Aight." EVANS replied, "Aight." Based on my training and experience and my participation in this investigation, I do believe that in the foregoing conversation WILSON contacted EVANS, and asked him "You wanna come to my crib or you want me to bring it to you," which I do believe that WILSON was inquiring if EVANS was ready for an additional supply of cocaine base. On August 5, WILSON called EVANS and asked "you got anything?" EVANS replied "huh?" WILSON then said "you got anything coming...possibly?" EVANS then responded "yea, I got the whole thing for you my nigga." Here, I believe that WILSON was seeking to collect drug proceeds from EVANS who assured him that he had all the money owed from the previous day's drug transaction. Investigating agents have identified EVANS as one of WILSON's crack cocaine customers and also as a street level distributor of crack cocaine in the area of Kensington Street in New Haven. In fact, following the conclusion of the wiretaps in this investigation, case agents have developed information that EVANS received approximately 50-60 grams of cocaine base from WILSON during the summer and fall of 2011 for re-distribution.

30.     On August 6, 2011, at approximately 2:13p.m., Kevin WILSON, a.k.a. "NATURE," received an incoming telephone call over Target Telephone #4, session #4554, from cellular telephone number 203-361-6511, unknown subscriber, utilized by ERIC EVANS, a.k.a. HOOV. The intercepted conversation which was in the English language was monitored and

recorded. The conversation proceeded as follows: WILSON answered, "Yo." EVANS replied, "Rudy Tuesday what's up?" WILSON replied, "I'm on my way back from work now my nigga." EVANS said, "Rudy, Rudy like how long Rudy?" WILSON said, "Uhhh, not even ten minutes good brother." EVANS said, "Aright call me as soon as you touch down." [CONVERSATION OVERLAPS] WILSON said, "Yeah I'm going straight to my rib." EVANS said, "Yeah, cuz I need the same thing, but I got a trap waiting for me." WILSON said, "Aight, aight, aight. I'm definitely gonna be there, I ain't playing around I ain't nobody else. I'm straight there." EVANS said, "Aight. Good look." Based on my training and experience and my participation in this investigation I do believe that in the foregoing conversation EVANS contacted WILSON and was looking to purchase additional quantities of cocaine base. I do believe that when EVANS said, "Yeah, cuz I need the same thing, but I got a trap waiting for me," he was informing WILSON that he needed the same quantity of narcotics that he had purchased during their previous transaction and that he had a customer waiting to finalize the transaction. "Trap" is a common slang word that drug traffickers use to refer to customers.

31. On August 8, 2011, at approximately 2:40p.m., WILSON and EVANS had a conversation in which EVANS inquired "you got more work, right?" In my experience, drug dealers use the word "work" as code for narcotics. WILSON replied that he was about to go to his "crib to see what's left." On August 8, 2012, at approximately 2:50p.m., Kevin WILSON, a.k.a. "NATURE," placed an outgoing telephone call over Target Telephone #4, session #5393, to cellular telephone number 203-361-6511, unknown subscriber, utilized by ERIC EVANS, a.k.a. HOOV. The intercepted conversation which was in the English language was monitored and recorded. The conversation proceeded as follows: WILSON said, "Yo, Duke, Duke gonna

23



come see you yo, he out here with me right now." EVANS replied, "Huh?" WILSON said, "I said he right here with me right now.  What you got anyway?" EVANS replied, "Who Duke?" WILSON said, "Huh?" EVANS said, "Hmm?" WILSON said, "I said what you got right now anyway?" EVANS replied, "I got spread my nigga." WILSON said, "Aight (UI)" EVANS said, "(UI) And I got your spread my nigga..or you want me to use your spread in my flip again?" WILSON said, "Hmm?" EVANS said, "I can use your spread in my flip again?" WILSON replied, "If you want, then want you gonna owe?" EVANS said, "What you mean, then want you gonna owe?" WILSON said, "4?" EVANS said, "Yeah." WILSON  said, "Aright." EVANS said, "And what he and what hey gon bring me?" WILSON said, "The same thing." EVANS replied, "The same thing for the deuce? " WILSON said, "Yeah." EVANS said, "Aight." WILSON said, "Aight."  Based on my training and experience and my participation in this investigation, I do believe that in the foregoing conversation WILSON contacted EVANS and informed him that he was going to send VINCENT CLARK, a.k.a. "NUNU," his drug partner at the time, to deliver the requested amount of cocaine base to EVANS.  I do believe that when EVANS said , "I can use your spread in my flip again," he was informing WILSON that if he allowed him to keep the money from the previous drug transaction he would be able to purchase double the amount of cocaine base.  They also agreed that EVANS would owe "4" meaning $400 further highlighting the fact that this was intended to be a credit transaction.

32.     On the basis of the foregoing, there is probable cause to believe and I do believe that DAQUAN HUDSON, a.k.a. "H E," conspired with VINCENT CLARK, a.k.a. "NU-NU," ANTHONY MOORE, a.k.a. "FREAK," MICHAEL SMITH, a.k.a. "SMITTY," and others known and unknown in furtherance of a conspiracy to distribute and possess with intent to



distribute narcotics, that is cocaine and 28 grams or more of cocaine base.

33.     On the basis of the foregoing, there is probable cause to believe and I do believe that ERIC EVANS, a.k.a. "HOOV," KEVIN WILSON, a.k.a. "NATURE," VINCENT CLARK, -a.k.a. NU-NU and others known and unknown conspired with one another in furtherance of a narcotics conspiracy and that the drug quantity attributable to Evans is in excess of 28 grams of cocaine base. Therefore, I request that criminal complaints and arrest warrants be issued for EVANS and HUDSON.

34.     I believe that the disclosure to any person of information pertaining to this investigation or the accompanying application would seriously jeopardize this investigation and could jeopardize the safety of confidential informants and case agents.  Accordingly, I request that this affidavit, the accompanying applications for criminal complaints, and the arrest warrant be ordered sealed by the Court.  So as to further protect against disclosure of the material contained herein for the protection of individuals involved in this investigation, I also request permission to have the original affidavit, be retained by the Office of the United States Attorney until such time as this matter is made public or at such other time as the Court may order.

10/16/2012

Anastas Ndrenika
Special Agent, DEA

Subscribed and sworn to before me this 16th day of October 2012, in New Haven, Connecticut.

/s/ Joan G. Margolis, U.S.M.J.
HON. JOAN GLAZER MARGOLIS
UNITED STATES MAGISTRATE JUDGE